# Exhibit 1

 CT Corporation

**Service of Process Transmittal**
10/23/2017
CT Log Number 532158631

**TO:**  Ana Mendez-Villamil
Lyft, Inc.
2300 Harrison St.
San Francisco, CA 94110

**RE:**  **Process Served in New York**

**FOR:**  Lyft, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Gustavo Camilo, etc., Pltf. vs. Lyft, Inc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Notice, Summons, Complaint, Verification, Attachment(s) |
| **COURT/AGENCY:** | New York County: Supreme Court, NY<br>Case # 1592652017 |
| **NATURE OF ACTION:** | Defendant's Unlawful Tax and Surcharge Deductions constitutes Breach of Contract, Fraud and Uniustenrichment |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, New York, NY |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/23/2017 at 11:00 |
| **JURISDICTION SERVED :** | New York |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service |
| **ATTORNEY(S) / SENDER(S):** | Joseph A. Romano<br>Joseph A. Romano, p.C.<br>1776 Eastchester Road<br>#210<br>Bronx, NY 10461<br>914-339-2605 |
| **REMARKS:** | The documents received have been modified to reflect the name of the entity being served. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/24/2017, Expected Purge Date: 10/29/2017<br><br>Image SOP<br><br>Email Notification, Lindsay Llewellyn  lllewellyn@lyft.com<br><br>Email Notification, Ana Mendez-Villamil  amendezvillamil@lyft.com<br><br>Email Notification, Anne Rupley  arupley@lyft.com<br><br>Email Notification, Adrienne Young  adrienneyoung@lyft.com<br><br>Email Notification, Sara Giardina  sgiardina@lyft.com |

Page 1 of  2 / SP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 **CT Corporation**

**Service of Process Transmittal**
10/23/2017
CT Log Number 532158631

**TO:**    Ana Mendez-Villamil
Lyft, Inc.
2300 Harrison St.
San Francisco, CA 94110

**RE:**    **Process Served in New York**

**FOR:**    Lyft, Inc.  (Domestic State: DE)

Email Notification,  John Pellegrini  jpellegrini@lyft.com

Email Notification,  Nick Clements  nclements@lyft.com

Email Notification,  Ana Mendez-Villamil  amendezvillamil@lyft.com

**SIGNED:**    C T Corporation System
**ADDRESS:**    111 8th Ave Fl 13
New York, NY 10011-5213
**TELEPHONE:**    212-590-9070

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GUSTAVO CAMILO, ,individually, and on behalf of all
others similarly situated,

Plaintiff/Petitioner,

-against-

Index No. 159205/2017

LYFT, INC, ENDOR CAR & DRIVER, LLC, TRI-CITY,
LLC, TRI-STATE CAR AND DRIVER, LLC

Defendant/Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE OF COMMENCEMENT OF ACTION SUBJECT
### TO MANDATORY ELECTRONIC FILING

PLEASE TAKE NOTICE that the matter captioned above has been commenced as an electronically filed case in the New York State Courts Electronic Filing System ("NYSCEF") as required by CPLR § 2111 and Uniform Rule § 202.5-bb (mandatory electronic filing). This notice is being served as required by that rule.

NYSCEF is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and unrepresented litigants who have consented to electronic filing.

Electronic filing offers significant benefits for attorneys and litigants, permitting papers to be filed with the County Clerk and the court and served on other parties simply, conveniently, and quickly. NYSCEF case documents are filed with the County Clerk and the court by filing on the NYSCEF Website, which can be done at any time of the day or night on any day of the week. The documents are served automatically on all consenting e-filers as soon as the document is uploaded to the website, which sends out an immediate email notification of the filing.

The NYSCEF System charges no fees for filing, serving, or viewing the electronic case record, nor does it charge any fees to print any filed documents. Normal filing fees must be paid, but this can be done on-line.

**Parties represented by an attorney:** An attorney representing a party who is served with this notice must either: 1) immediately record his or her representation within the e-filed matter on the NYSCEF site; or 2) file the Notice of Opt-Out form with the clerk of the court where this action is pending. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the operational knowledge to comply with e-filing requirements. [Section 202.5-bb(e)]

**Parties not represented by an attorney: Unrepresented litigants are exempt from efiling. They can serve and file documents in paper form and must be served with documents in paper form.** However, an unrepresented litigant may participate in efiling.

For information on how to participate in e-filing, unrepresented litigants should contact the appropriate clerk in the court where the action was filed or visit www.nycourts.gov/efileunrepresented. Unrepresented litigants also are encouraged to visit www.nycourthelp.gov or contact the Help Center in the court where the action was filed. An unrepresented litigant who consents to e-filing may cease participation at any time. However, the other parties may continue to e-file their court documents in the case.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov).

Dated: 10/18/2017

Signature

LUIGI IZZO
Name


Firm Name

1776 Eastchester Road, Suite 210
Address

Bronx, NY 10461
City, State, and Zip

914-339-2605
Phone

lizzo@romanolegalservices.com
E-Mail

To:   See attachment.

9/3/15

Index # 159265 2017        Page 2 of 2        EFM-1

SUPREME COURT OF THE STATE OF
NEW YORK COUNTY OF NEW YORK

GUSTAVO CAMILO, individually,
and on behalf of all others similarly situated,

                    Plaintiffs,

           vs.

LYFT, INC., ENDOR CAR & DRIVER, LLC,
TRI-CITY,LLC,  and TRI-STATE CAR AND
DRIVER, LLC,

                   Defendants.

Index No. 159245/2017

**SUMMONS**

Plaintiff resides at
711 West 180th Street, Apt. 44
New York, NY 10033

To the above named Defendant(s)

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of
your answer, or , if the complaint is not served with this summons, to serve a notice of appearance, on
the Plaintiff's Attorney(s) within 20 days after the date of service (or within 30 days after the service is
complete if this summons is not personally delivered to you within the State of New York); and in case
of your failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the complaint.

Dated: Bronx, New York
October 17, 2017

Very truly yours,

JOSEPH A. ROMANO, ESQ.
*Law Offices of*
*Joseph A. Romano, P.C.*
1776 Eastchester Road, #210
Bronx, New York 10461
Direct Line: (914) 339-2605
Fax: (845) 213-4291

**Defendant's Addresses:**

LYFT, INC
C/O T CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NY 10011

LYFT, INC.
548 MARKET STREET, SUITE 68514
SAN FRANCISCO, CA 94104

ENDOR CAR & DRIVER, LLC
31-00 47TH AVENUE
LONG ISLAND CITY, NY 11101

TRI-CITY, LLC
548 MARKET STREET, SUITE 68514
SAN FRANCISCO, CA 94104

TRI-STATE CAR AND DRIVER, LLC
548 MARKET STREET, SUITE 68514
SAN FRANCISCO, CA 94104

SUPREME COURT OF THE STATE OF
NEW YORK COUNTY OF NEW YORK

---

GUSTAVO CAMILO, individually,
and on behalf of all others similarly situated,

                      Plaintiffs,

        vs.

LYFT, INC., ENDOR CAR & DRIVER, LLC,
TRI-CITY,LLC,  and TRI-STATE CAR AND
DRIVER, LLC,

                      Defendants.

---

Index No.  159265/2017

**CLASS ACTION
COMPLAINT**

**Jury Trial Demanded**

---

      Plaintiffs GUSTAVO CAMILO, by their attorneys, for him and on behalf of all others similarly situated, allege as follows upon personal knowledge as to their own acts, and upon information and belief based in part upon the investigation conducted by counsel:

**SUMMARY
OF CLAIMS**

      1.      This is a class action brought by Plaintiffs against LYFT, INC., ENDOR CAR & DRIVER, LLC, TRI-CITY,LLC,  and TRI-STATE CAR AND DRIVER, LLC (collectively referred to as "Defendants"). Plaintiffs were employed by Defendants as Taxi Drivers, and bring suit both on their own behalf, and on behalf of a class that consists of all Taxi Drivers

employed and contracted by "Defendants" at any time between January 2014, and the date when judgment is entered in this action (the "Class", and the "Class Period").

2.     LYFT provides a transport service that allows drivers to sign up as drivers using their privately owned cars, to pick up and drive passengers for a fee.

3.     LYFT uses mobile technology to run for hire livery service and insurance business, arranging rides for passengers on non-fixed routes in exchange for compensation and providing insurance coverage to Lyft drivers (more specifically black car fund coverage to their New York drivers).

4.     Accordingly, Lyft to provide such Black Car Fund Insurance created ENDOR CAR & DRIVER, LLC (Black Car Fund Number B02844), TRI-CITY,LLC (Black Car Fund Number B02510), and TRI-STATE CAR AND DRIVER, LLC, New York Based Limited Liability Corporations to be able to comply with and provide said coverage under New York State Law.

5.     As a Black Car Fund registered based provider "Defendants" are required to collect a fee from every passenger (only from the passenger) in the amount of 2.5% of said fare.

6.     Defendants are not allowed to collect the 2.5% fee from their drivers but solely from their passengers.

7.     This fee would in turn allow their drivers to be afforded workers compensation in the event of an injury resulting as a work related accident.

8.     However, Defendants which requires passengers to pay via credit card charged the 2.5% Black Car Fund Fee from the passenger instantly upon payment of said fare, and then also charged each driver the same 2.5% fee.

9.     As a result, Defendants double charged every driver.

10.     Defendants further added all fees and taxes together and took an 11.4% (blanket charge that increase on the total overall fare) this administration and Black Car Fee would in

essence take more from the driver since the black car fee was not excluded from the Defendants calculation of earn wages for Plaintiffs.

11.    Accordingly, Defendants' violated the NY EXC-EXCECUTIVE ARTICLE 6-F which does not allow bases to charge drivers directly the 2.5% fee associated with the black car fund.

12.    As a result, Plaintiffs and the Class were illegally, negligently, fraudulently, and unjustly deprived of the earned fares for their work.

13.    Defendants wrongful deductions from Plaintiffs salary where not for any benefit to Plaintiffs.

14.    Defendants' wrongful combining of fees and taxes caused excess wages to be illegally with held from Plaintiffs.

15.    Defendants' wrongful deductions from Plaintiffs salary were not authorized by Plaintiffs.

16.    As a result of Defendants' violations of the NYLL and NYCRR, Plaintiffs and the Class were illegally, negligently, fraudulently, and unjustly deprived of the earned fares for their work.

17.    Further, Lyft, Inc., mandates that all Drivers enter into a contract with Lyft, Inc.. As set forth below, Defendants are in violation of its obligations pursuant to these contracts and has engaged in fraudulent practices with respect to the contract terms. Defendants' contract and fraud violations amount to nothing less than outright theft.

## JURISDICTION AND VENUE

18.    This Court has personal jurisdiction over Defendants since ENDOR CAR & DRIVER, LLC, and TRI-CITY,LLC which are New York domestic limited liability companies with designated jurisdiction of New York County under CPLR § 301 and all Defendants do business in New York.

19.     Venue is proper under CPLR § 503 because Defendants' bases are located in this county, and TLC's principle officers are locate whom defendants bases are registered and license with to operate in New York County, Defendants provide their transportation service in, and because Plaintiff reside in this county.

## PARTIES

20.     Plaintiff GUSTAVO CAMILO, is employed by Defendants as a driver for hire using the LYFT PLATFORM from January 2014 until present date. Throughout his employment, Plaintiff GUSTAVO CAMILO resided in New York County, New York, and worked out of the greater New York City area located through out New York County.

21.     Defendant LYFT, INC is a duly formed Delaware corporation that owns and operates "LYFT PLATFORM" a smart phone application that provides a for hire transportation service in New York County.

22.     Defendant ENDOR CAR & DRIVER, LLC, and TRI-CITY,LLC are NY domestic limited liability companies with an designated jurisdiction of New York County. The latter two Defendants are wholly owned domestic subsidiaries of Defendant LYFT, INC. All Defendants are otherwise licensed to conduct business in New York, maintain bases and licenses with New York TLC Commission as well as the New York Black Car Fund, and do business through a common network of offices and/or applications.

23.     The Defendants parents operate wholly owned subsidiaries in New York, each of which has held or currently holds a TLC license to operate an FHV Base.

24.     All of the Defendant FHV bases listed below manage the Lyft workforce as they are responsible for providing the dispatches to each of the plaintiffs.

25.     Upon information and belief, each and every Lyft FHV base has held or currently holds a Certificate of Authority, issued by the New York State Department of Taxation and

Finance for the collection of state taxes. The Lyft FHV base subsidiaries are responsible under the N.Y. Tax Law for collection and payment of the 8.875% sales tax on black car rides.

26.     Similarly, under the New York Executive Law, each FHV base is responsible for collecting and remitting a 2.5% surcharge on rides to the Black Car Fund ("BCF"), an injured workers fund for Black Car Drivers.

27.     Upon information and belief, the Lyft FHV bases deducted sales tax and Black Car Fund monies from driver earnings to remit to the state and the BCF, respectively.

28.     Throughout the Class Period, Defendants maintained offices and/or bases in the State of New York and in New York County and conducted business at those locations, and in many other locations where Drivers carried out their work throughout the five boroughs of New York City and elsewhere in New York State using the LYFT PLATFORM. During the Class Period, Defendants employed approximately thousands of drivers (at any one time) in the Greater New York Area, and Plaintiffs estimate that the Class far exceeds that amount in total number of participants during the Class Period and includes a minimum of several thousand employees.

29.     All requests for the Defendants' service are made through the LYFT PLATFORM smartphone application (the Lyft "app") and are dispatched to Lyft Drivers through Lyft's centralized dispatch nctwork which also operates via the Lyft app.

30.     All FHVs licensed by the New York City TLC are required to be affiliated with a FHV base.

31.     Regardless of whether Plaintiffs' vehicles were affiliated with a Lyft FHV base, all Lyft dispatches they received were dispatched to them from one of the Defendant Lyft FHV bases via the Lyft app.

32.     Plaintiffs allege that during the Class Period, each Defendant was the agent and employee of all other Defendants, and in performing the acts alleged in this Complaint, was acting within the course and scope of that agency and employment. Accordingly, any reference to

"Defendant" or "Defendants" shall mean "Defendants and each of them. Defendants are individually, jointly and severally liable as the employers of Plaintiffs and of each Class member, because each Defendant, directly or indirectly, or through an agent or any other person, employed or exercised control over the wages, fares, and/or deductions of such Class members.

## Defendants System of Illegal Wage Deductions

33. Defendants employed Plaintiffs and all Class members pursuant to electronically sent contracts, which clearly defined their earnings and benefits.

34. This provided, among other things, that the driver would be paid by way of fares performed and be charged an 20% LYFT commission fee, 11.4% administration charge which was for operational expenses and the black car fund.

35. For each Driver, Defendants maintained an Express Pay Fee account called the "Express Pay Earning." Defendants credited this account with each and every fare that became payable to the Driver, doing so on a continuing basis as individual fares were earned by the Driver.

36. Defendants then deducted the commission, and the 11.4 % tax that included the black car fund fees from the Driver's share. Defendants also charged passengers a sale tax and a 2.5% Black Car Fund Fee as well, which was directly taken via credit or debit prior to the above deductions.

## CLASS ACTION ALLEGATIONS

37. Plaintiffs bring this action as a class action on behalf of themselves and the Class pursuant to CPLR § 901.

38. Plaintiffs are informed and believe that there are thousands of members of the Class, and that the Class is so numerous that joinder is impractical.

39.     There is a well-defined community of interest in the questions of law and fact affecting the Class as a whole, such that the questions of law and fact common to all members of the Class predominate over questions which may affect only individual Class members. These common questions include, *inter alia,* the following:

      a.  Whether Defendants wrongfully deducted monies from Class members' wages and/or otherwise unlawfully required the Class members to pay for the Black Car Fund provided by Defendants in violation of New York Labor Law § 193;

      b.  Whether Defendants wrongfully deducted monies from Class members' wages and/or otherwise unlawfully required the Class members to make payments directly to the Black Car Fund in violation of New York EXC-EXCECUTIVE ARTICLE 6-F.

      c.  Whether Defendants wrongfully deducted monies from Class members' wages and/or otherwise unlawfully required the Class members to make payments to the Black Car Fund after all ready collecting such fees directly from passengers and fraudulently did not disclose such double charges to Drivers.

      d.  Whether Defendants wrongfully deducted monies from Class members' wages and/or otherwise unlawfully required the Class members to make payments to the Black Car Fund after all ready collecting such fees directly from passengers and as such Defendants were unjustly enriched.

      e.  Whether the members of the Class have been damaged and, if so, the extent of such damages.

40.     As employees of Defendants, Plaintiffs assert claims that are typical of the claims of the Class. Plaintiffs were improperly charged by Defendants a 2.5% fee for the Black Car Fund, and Plaintiffs neither gave permission nor were aware of Defendants double charging of such fees. Plaintiffs will fairly and adequately represent and protect the interests of the Class and have no

interests antagonistic to those of the other members of the Class. Plaintiffs have retained competent counsel who are experienced in the prosecution of class action litigation.

41.     Plaintiffs and other members of the Class have suffered damages as a result of Defendant's wrongful conduct. Because of the size of the claims of the individual members of the Class, few, if any, members of the Class could afford to seek legal redress for the wrongs complained of herein. A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, the members of the Class likely will not obtain redress of their injuries, and Defendants will retain the proceeds of their violations of New York Labor Law §§ 193 and New York EXC-EXCECUTIVE ARTICLE 6-F 652.

## FIRST CLAIM FOR RELIEF
### Unlawful Wage Deductions (Violation of New York Labor Law § 193)

42.     Plaintiffs repeat and re-allege the allegations set forth above, as though set forth in full herein.

43.     The Class includes all Drivers employed by Defendants in New York State during the Class Period. Defendants' employment, black car fund, and compensation/wage deductions practices were and are uniform throughout New York State in all respects material to the claims asserted in this Complaint.

44.     The New York Labor Law defines wages as "the earnings of an employee for labor or services rendered, regardless or whether the amount of earnings is determined on a time, piece, *commission* or other basis." N.Y. Lab. Law § 190(1). Furthermore, an "[e]arned commission" is defined as "a commission due for services ... which is due according to the terms of an applicable contract...." N.Y. Lab. Law § 191-a(b).

45.     The New York Labor Law expressly prohibits an employer from making deductions from employees' wages.

46.     § 193 provided in pertinent part:

**Deductions from wages.**

1. No employer shall make any deductions from the wages of an employee, except deductions which:

   a.   are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or

   b.   are expressly authorized in writing by the employee and are for the benefit of the employee; provided that such authorization is kept on file on the employer's premises. Such authorized deductions shall be limited to payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee.

2. No employer shall make any charge against wages, or require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages under the provisions of subdivision one of this section.

47.   Section 193 thus prohibited deductions from employees' wages unless the deductions were both (1) "expressly authorized" by and "for the benefit of" the employee, and (2) within one of the enumerated categories of permissible deductions. It is well established judicially that § 193 prohibits any forfeiture of earned wages and that it was legislatively intended to prohibit arrangements between employers and their employees.

44.   Nevertheless, Defendants, pursuant to a unilaterally established and illegal policy, made deductions from the wages due to Plaintiffs and members of the Class, or required them to pay directly additional sums by separate transaction, for the Black Car Fund even though prohibit by New York Law to deduct said fees directly from Drivers and all ready collected directly from their passengers the 2.5% fee, hence giving no benefit to Plaintiffs to have such fee collected by Defendants.

45.   Requiring employees to pay such fees benefits the employer, not the employee, and sets up Defendants actions of the type that § 193 was intended to prohibit.

46.   Thus, the deductions, charges and required payments at issue violate § 193 because they were applied to wages that were already earned, and were neither for the benefit of the

employee nor of the limited type permitted by the statute.

48.     In § 193(1)(b) as amended, the enumerated categories of permissible deductions

made "for the benefit of" an employee are expanded to include the following:

> (i)     insurance premiums and prepaid legal plans;
> (ii)    pension or health and welfare benefits;
> (iii)   contributions to a bona fide charitable organization;
> (iv)    purchases made at events sponsored by a bona fide charitable organization affiliated with the employer where at least twenty percent of the profits from such event are being contributed to a bona fide charitable organization;
> (v)     United States bonds;
> (vi)    dues or assessments to a labor organization;
> (vii)   discounted parking or discounted passes, tokens, fare cards, vouchers, or other items that entitle the employee to use mass transit;
> (viii)  fitness center, health club, and/or gym membership dues;
> (ix)    cafeteria and vending machine purchases made at the employer's place of business and purchases made at gift shops operated by the employer, where the employer is a hospital, college, or university;
> (x)     pharmacy purchases made at the employer's place of business;
> (xi)    tuition, room, board, and fees for pre-school, nursery, primary, secondary, and/or post-secondary educational institutions;
> (xii)   day care, before-school and after-school care expenses;
> (xiii)  payments for housing provided at no more than market rates by non-profit hospitals or affiliates thereof; and
> (xiv)   similar payments for the benefit of the employee.

49.     Defendants' deductions discussed above, however, do not fall within any of these

enumerated categories.

50.     As a result of Defendant's improper deductions from wages (including required

separate payments from wages), Plaintiffs and the members of the Class were damaged in an

amount to be proved at trial.

51.     Therefore, Plaintiffs demand, on behalf of themselves and the members of the

Class, reimbursement of all wages during the Class Period that Defendants deducted or charged

(or required to be paid to Defendants by separate transactions) in order to recover Defendants'

wrong direct deductions, plus interest and attorney's fees as provided by law.

## SECOND CLAIM FOR RELIEF
### Defendant's Unlawful Tax and Surcharge Deductions constitutes Breach of Contract, Fraud, and Unjustenrichment

52.     The NYLL prohibits employers from making any deductions from an employee's wages except those permitted by law. N.Y. Lab. Law §193.

53.     At all times relevant, Defendant made additional deductions from Drivers' pay to cover the cost of taxes and contributions to a Drivers Workers' Compensation Fund, the Black Car Fund.

54.     In order to receive Defendants dispatches, all Plaintiffs and similarly situated persons were required to either sign a paper copy, or electronically "accept" a "Software License and Services Agreement" (hereafter "Licensing Agreement" or "Agreement") on their phones to use the LYFT PLATFORM App.

55.     LYFT's Licensing Agreement is over ten (10) pages long, but these Agreements did not specify the trip fare schedule, and exact deductions including Black Car Fund Fees set by Defendants, a percentage of which Plaintiffs received as consideration for driving.

56.     The trip fare schedule pertaining to a given Territory is set forth in a separate "Driver Addendum Related to LYFT PLATFORM Services" and the "City Addendum" that Drivers did not view or sign at the time theyaccepted.

57.     Trip fare schedules were subject to unilateral change by Defendants and percentages due to Drivers under the Agreement could be changed unilaterally by Defendants any time.

58.     In order to receive dispatches after a new Licensing Agreement, a Driver was required to agree to the new contract by simply performing service after notice of such changes, which appeared on his or her phone, before any new dispatch could come in.

59.     All Drivers were bound by contract with Defendants to provide driving services in

exchange for receipt of a percentage of the fare collected by Defendants from passengers.

60.    Pursuant to the Agreements in force from at least January 2014 until present date, Defendants, defined the word "Charges" as "the amount including Fares plus applicable taxes and fees that the [Driver] is entitled to charge the User for the Ride, based on the recommended fares for the City as set out on http://www.lyft.com/cities or on the App."

61.    That is, "Fare" meant the total amount defendants charged its passengers for a ride.

62.    Quite simply, the Agreements require Defendants to collect the gross fare, and remit the fare to Drivers, minus Defendant's Service Fee.

63.    Nothing in these Agreements empowers Defendants or any of its subsidiaries to remove any additional amounts from the fare.

64.    Yet, at all relevant times, Defendants and its subsidiaries collected the entire Fare from passengers, and remitted to Drivers the Fare minus Defendant's fee, and additionally, minus sales tax and BCF surcharge amounts.

65.    The Agreements plainly did not permit Defendants to take the taxes and BCF surcharge amounts entirely from the Driver's portion, on top of the Service Fee that Defendants states will be the only deduction from Driver-earned fares.

66.    By so doing, Defendants violated the Agreement to Plaintiffs' detriment.

67.    Pursuant to the Agreements in force from September 2016 more recent Agreements states up to and including the present, the Licensing Agreements likewise defined "All Fares" are subject to a Lyft Commission and will be net of any amounts that defendants are required to withhold by law.

68.    Defendant's Agreements has stated that the Driver will "pay Lyft a commission fee on a per Transportation Services transaction basis calculated as a percentage of the Fare ... as provided or otherwise made available by Lyft from time to time for the applicable City."

69.     Defendant's more recent Agreements states that Lyft will remit to drivers the Fare minus Lyft's Commission Fee. As with its earlier Agreements, nothing in Lyft' s Agreements entitles Defendants to take any additional amounts from Driver earnings aside from Lyft's percentage commission.

70.     Defendants knows that under the New York Tax Law, black car bases are the vendor for sales tax purposes with a non-delegable to duty to collect and remit sales taxes.

71.     As the vendor, Defendants and its subsidiary Black Car bases were responsible to collect and remit the tax and Black Car Fund Fees.

72.     At all times relevant, Defendants were required to and responsible for complying with the Tax Law and New York applicable Laws.

73.     Defendants completely controlled the electronic payment process, and Drivers are forbidden from accepting cash, there would be no way for the Driver to collect additional amounts independently.

74.     At all times, Defendants have itemized its receipts to show that Black Car Fund Fees were directly taken from Drivers pay checks.

75.     While payment for trips would be made from the passenger to Lyft, consumer receipts state that the Black Car Fund Fees were taken as well.

76.     Defendants and its subsidiaries, treating the tax and Black Car Fund Fee as included within the fare charged to the passenger, then paid its Drivers the fare minus Lyft's Commission and 11.4% administrative Charge which encompassed operational expenses and the Black Car Fund.

77.     Defendants and its subsidiaries also treat the BCF surcharge as included within the fare charged to the passenger, then paid its Drivers the fare minus Lyft's commission and the BCF surcharge amount.

78.     At all times, by deducting sales tax and BCF amounts from Driver earnings, Lyft

and its subsidiary Black Car bases made unlawful deductions from Plaintiffs'
wages.

79.    As the payor of sales tax monies, the Defendant subsidiary Lyft FHV bases
unlawfully deducted tax amounts from driver wages, in order to remit these
amounts to the state.

80.    As the payor of BCF contributions, the Defendant subsidiary Lyft FHV bases
unlawfully deducted BCF surcharge amounts from driver wages, in order to remit
these amounts to the BCF. Plaintiffs have not been presented with any contracts from
the Defendant FHV bases, and therefore they have not assented to arbitrate any
disputes with any of the Lyft subsidiary FHV bases who made these unlawful
deductions.

81.    Defendants to deduct sales tax and BCF amounts from the Fare, Defendants would
still have violated its Agreement by allowing the assessment of the Service Fee on the
gross fare, including tax and BCF surcharges.

82.    Payment records state that Defendants continued to assess its Commission Fee and
11.4% Administrative Charge on the gross fare, including amounts for tax and the
BCF sur-charge.

83.    Defendants owe monetary restitution to Plaintiffs under breach of contract, fraud and
unjust enrichment and the class they seek to represent the amount calculated to be
wrongfully withheld from their wages.

## DEFENDANTS ACTED SYSTEMATICALLY AND KNOWINGLY, INTENTIONALLY AND WILLFULLY

84.    On information and belief, all of the above common allegations as to Defendant's
treatment of the individual plaintiffs are typical of the way all Lyft Drivers in New
York were hired, instructed, paid, and/or compensated.

85.    Defendants committed the acts alleged in this complaint knowingly, intentionally and
       willfully.

86.    Defendants knew that the taking of unlawful deductions would economically injure
       Plaintiffs and violate New York State laws.

87.    Defendants, in violation of the NYLL, have also unlawfully made deductions from the
       class action Plaintiffs' wages since at least on or about January 2014.

88.    Defendants on or about August 8, 2017 sent a email to all drivers stating that
       Defendants would no longer charge the 11.45 administrative fee and the this change
       will increase Drivers overall earning.

89.    However, Defendants fail to inform Plaintiffs that their previous practices were
       unlawful and caused Plaintiffs significant loss of earnings that Plaintiffs are entitled
       to.

90.  . Defendants were unjustly enriched by their Fraudulent Practices.

91.    Oddly, Defendants tried to cover up their past fraudulent practices with a positive
       email suggesting Defendants had change their practices for the sole benefit of
       Plaintiffs.

92.    The class action Plaintiffs, at various times, electronically accepted Defendant's
       Licensing Agreement in order to receive Defendants dispatches.

93.    The class action Plaintiffs also bring various common law claims for breach of

contract and fraud, arising from Defendants' violations of their contractual

obligations and various fraudulent misrepresentations made therein by

Defendants.

**DEFENDANTS MAY NOT SEEK TO COMPEL ARBITRATION AS THE
ARBITRATION   AGREEMENT   IS   UNCONSCIONABLE   AND
UNENFORCEABLE AS AGAINST LAW AND PUBLIC POLICY**

94.    Defendants have placed in their Agreements, which Drivers must accept as a

precondition of being assigned any dispatches, a provision which contains an

arbitration agreement. The Driver has no bargaining power to resist this

agreement, which is totally one sided in favor of Lyft, Inc.

95.    The arbitration agreement requires all claims to be arbitrated.

96.    The arbitration agreement prohibits any class claims, so for example if the

approximately 65,000 Lyft Drivers in New York City were to arbitrate the question

of their illegal deductions, breach of contract, fraud, and unjust enrichment,

conceivably there would have to be 65,000 individual arbitrations on the same

issue.

97.    The arbitration agreement requires all claims generally applicable to workers to be

arbitrated.

98.    In June of 2015, the District Court in *Mohamed v Uber Technologies  et.   al.* 109

F. Supp. 3d 1185, (N.D. Calif. 2015) found that all Uber contracts with arbitration

Agreements through 2014, were either unconscionable or unenforceable under

California law. As a result, in December 2015, Uber changed the arbitration

agreement and circulated it to the Drivers.

99.    Plaintiffs allege that the arbitration provisions of the Agreements are unconscionable and against public policy.

100.   The agreement which prevents class claims violates substantive rights under the National Labor Relations Act. The National Labor Relations Board in both *D. R. Horton,* 357 NLRB 184 (2012) and *Murphy Oil,* 363 NLRB 77 (2015) specifically determined prohibitions on class claims do interfere with workers' ability to band together to protest their working conditions and thus interfere with their rights to engage in protected concerted activity and to organize under Section 7 of the National Labor Relations Act.

101.   The U.S. Court of Appeals for the Seventh Circuit has affirmed Plaintiffs' position that an arbitration clause prohibiting employee class or collective actions violates the National Labor Relations Act. *Lewis v. Epic Sys. Corp.,* 2016 U.S. App. LEXIS 9638 (7th Cir. May 26, 2016).

102.   As resect as July 18, 2017, the **Appellate Division of the First Department** found in **Gold v. New York Life Ins. Co., that Plaintiffs cannot be required to arbitrate collectively their disputes with Defendants because that obligation would run afoul of the National Labor Relations Act**.

103.   The **First Department agreed with the reasoning in Lewis v. Epic Sus Corp.,** (823 F3d 1147 (7ᵗʰ Cir 2016) which denied employer's motion to proceed under arbitration clause, **declining to enforce a clause that precluded employees from seeking any class, collectively, or representative remedies to wage-and-hour disputes** because this clause violates Section 7 and 8 of the NLRA.

104.   As noted in this complaint, the factual allegations support a finding that Plaintiffs are employees. They also establish that Lyft has been unlawfully deducting amounts to

be paid in Black Car Fund Fees from the Drivers' wages thus engaging in both unlawful deductions as well as a breach of their own contracts.

105. Plaintiffs further allege that the arbitration agreement has no impact on the claims plaintiffs are making against the FHV bases with respect to unlawful deductions from wages or breach of contract as there are no contracts with the Defendants bases which, on information and belief, are involved in the unlawful deductions from Plaintiffs' wages.

106. Lastly, under New York EXC-EXCECUTIVE ARTICLE 6-F., all Drivers are employees of the Black Car Fund for the purpose of workers compensation benefits and for the purpose of the Fund, as such Defendants arbitration agreement should not apply in such context.

## CLAIM FOR RELIEF
### Breach of Contract

107. Plaintiffs, on behalf of themselves and those similarly situated, repeat, reiterate and incorporate each and every preceding paragraph as if set forth fully herein.

108. Throughout the period covered by the applicable statute of limitations, defendants' action and omissions, as alleged above, in paragraphs constituted independent and separate breaches of the Licensing Agreement (contract) entered into by Plaintiffs and those similarly situated and Defendants.

109. As a direct and proximate result of Defendants' breaches, Plaintiffs and others similarly situated, have been damaged in an amount as yet to be determined.

**WHEREFORE**, in accordance with all of the above claims in the First through Fourth Claims for Relief, inclusive, Plaintiffs demand judgment in their favor and in favor of the other members of the Class, and against Defendants, individually, jointly and severally, for:

A. An order certifying this action to be a proper class action and designating Plaintiffs and the undersigned counsel as the representatives thereof;

B. Restitution and reimbursement to Plaintiffs, and to the other members of the Class, of all monies which Defendants either unlawfully deducted from the wages of Plaintiffs and other Class members, or unlawfully required to be paid back to Defendants, during the Class Period, plus interest thereon at the statutory rate;

C. Restitution and reimbursement to Plaintiffs, and to the other members of the Class, of all monies which Defendants that were unjustly enriched by said deducted wages of Plaintiffs and other Class members, plus interest thereon at the statutory rate;

D. Restitution and reimbursement to Plaintiffs, and to the other members of the Class, of all monies which Defendants that were fraudulently deducted from wages of Plaintiffs and other Class members, plus interest thereon at the statutory rate;

E. Imposition of a constructive trust upon the assets of the Defendants to the extent of the sums due to Plaintiffs and to members of the Class;

F. An order requiring Defendants to provide an accounting of all wages and all sums unlawfully deducted, charged back or withheld from compensation due to Plaintiffs and the other members of the Class;

G. An order temporarily, preliminarily and permanently enjoining and restraining Defendants from engaging in similar unlawful conduct as set forth herein;

H. Declaratory relief including declarations setting forth the rights of Plaintiffs and the members of the Class as alleged in this Complaint and setting forth the Defendants'

violations of those rights;

I.  Prejudgment interest;

J.  Reasonable attorneys' fees, litigation expenses and costs of suit; and

K.  Such other and further relief as the Court deems just and equitable.


Plaintiffs demand a jury trial for all causes of action and claims for which they have a

right to a jury trial.

Dated: October 13, 2017
New York, New York

By _____
Luigi Izzo, Esq.
Attorneys for Plaintiffs and the Class
The LAW OFFICES of JOSEPH A. ROMANO P.C.
1776 Eastchester Road, Suite 210
Bronx, NY 10461
Tel: (914) 339-2605
Fax: (845) 891-0156

## VERIFICATION

STATE OF NEW YORK, COUNTY OF BRONX          ss:

I, GUSTAVO CAMILO, being duly sworn, deposes and says:

      I am of the plaintiff in the within action; I have read the foregoing SUMMONS &

COMPLAINT and know the contents thereof; the same is true to my own knowledge,

except as to those matters said to be upon information and belief as to those matters

the deponent believes to be true.

Dated: Bronx, New York
       October 17, 2017

                                       _Gustavo Camilo_
                                       GUSTAVO CAMILO

Sworn to me this 17th

day of October , 2017

NOTARY PUBLIC

DENISE BREA
NOTARY PUBLIC-STATE OF NEW YORK
No. 01BR6213212
Qualified in Bronx County
My Commission Expires November 02, 201

SUPREME COURT OF THE STATE OF
NEW YORK COUNTY OF NEW YORK

GUSTAVO CAMILO, individually,
and on behalf of all others similarly situated,

                  Plaintiffs,

vs.

LYFT, INC., ENDOR CAR & DRIVER, LLC,
TRI-CITY,LLC,  and TRI-STATE CAR AND
DRIVER, LLC,

              Defendants.

Index No. 159245 | 2017

**SUMMONS & CLASS
ACTION COMPLAINT**

LAW OFFICES OF JOSEPH A. ROMANO, P.C.

Attorneys for Plaintiffs

Office and Post Office Address, Telephone

1776 Eastchester Road, Suite 210

Bronx, New York 10461

(914) 965-1515