**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GUSTAVO CAMILO, on behalf of himself and all
others similarly situated,

Plaintiff,

v.

LYFT INC., ENDOR CAR & DRIVER, LLC, TRI-
CITY, LLC and TRI-STATE CAR AND DRIVER,
LLC, THE BLACK CAR FUND, BLACK CAR
ASSISTANCE CORPORATION, and NEW YORK
BLACK CAR OPERATORS INJURY
COMPENSATION FUND, INC.,

Defendants.

**Case No. 1:17-cv-9116-ALC**

**DECLARATION OF NIKOLAS
LAUFER-EDEL IN SUPPORT OF
LYFT DEFENDANTS' MOTION
TO COMPEL ARBITRATION
AND TO STAY LITIGATION**

I, Nikolas Laufer-Edel, declare as follows:

1.      I have been employed by Lyft, Inc. ("Lyft") since July 11, 2016 as a Computer Systems Analyst.  In that role, I am familiar with Lyft's Platform and mobile phone application, including the user registration process and the processes by which Lyft updates its Terms of Service Agreement, communicates updates to its Terms of Service Agreement to users, and by which users (both drivers and riders) consent to the updated Terms of Service Agreement.  I am also familiar with and have access to Lyft's records regarding users' account information, including information about when and how users of Lyft's Platform register for the Lyft Platform, use the Lyft Platform, and respond to updates to the Lyft Terms of Service Agreement.

2.      The following facts are based on my personal knowledge and review of Lyft records. If called upon to testify as a witness, I could and would testify competently as to their truth.

### *Lyft Platform and App*

3.      Lyft is a mobile-based ridesharing platform (the "Lyft Platform") that enables

people who seek transportation to certain destinations ("riders") to be matched with people willing to drive to or through those destinations ("drivers") (collectively, "users"). The Lyft Platform includes, among other things, Lyft's website, technology platform, and mobile phone application (called the "Lyft App"). Using the Lyft App, Lyft offers information and a method to connect drivers and riders with each other and permit communication between drivers and riders.

4.      As a Computer Systems Analyst for Lyft, I am familiar with the process by which users register for and interface with the Lyft Platform.  The process to create a registered profile and use the Lyft Platform requires an individual to download the Lyft App, consent to the Terms of Service Agreement, and supply information such as the individual's first and last name, email address, and phone number.  Both drivers and riders must complete this registration process before offering or requesting rides through the Lyft App.

5.      Lyft's Terms of Service Agreement describes the terms and conditions on which Lyft offers access to Lyft's Platform.  Users consent to Lyft's Terms of Service Agreement as part of the registration process.

6.      Lyft periodically updates its Terms of Service Agreement.  Such updates are communicated to Lyft users.

### *The September 30, 2016 Update to the Terms of Service Agreement*

7.      On September 30, 2016, Lyft updated its Terms of Service Agreement. Subsequent to the update, registered Lyft users who opened the Lyft App were required to consent to the September 30, 2016 Terms of Service Agreement, which automatically appeared on a screen in the Lyft App.  The following screen is a depiction of the user interface that a registered Lyft user would have seen:

//

//



8.     Users presented with the September 30, 2016 Terms of Service Agreement had the opportunity to scroll all the way through the text of the September 30, 2016 Terms of Service Agreement without leaving this screen. Attached as Exhibit 1 is a true and correct copy of the September 30, 2016 Terms of Service Agreement.

9.     Drivers presented with the September 30, 2016 Terms of Service Agreement were required to click "I accept" in order to proceed to offer a ride using the Lyft App.  A registered driver, *i.e.*, a driver who had previously registered for the Lyft App, could not offer a ride through the Lyft App after being presented with the September 30, 2016 Terms of Service Agreement if the driver clicked the "X" button at the top right-hand corner of the screen rather than the "I accept" button.  Once a registered driver was presented with the September 30, 2016

Terms of Service Agreement, until the driver clicked the "I accept" button, the screen shown above continued to appear each time the driver opened the Lyft App.  A registered driver could not offer a ride through the Lyft App after being presented with the September 30, 2016 Terms of Service until after he or she clicked the "I accept" button.

### Electronic Storage of User Acceptance

10.     In the normal course of business, Lyft maintains user account information, including information about when and how its users (both drivers and riders) register for the Lyft Platform, use the Lyft Platform, and respond to updates to the Lyft Terms of Service Agreement. As a Computer Systems Analyst, I have access to this registration, use, and update information, and I am familiar with this information and the manner in which it is recorded and maintained.

11.     When a user clicked "I accept" after being presented with the September 30, 2016 Terms of Service Agreement in the Lyft App, Lyft automatically recorded the timestamp of the user's acceptance of the Terms of Service Agreement.

12.     Information relating to a user's registration process and a user's acceptance of an update to the Terms of Service Agreement is maintained in Lyft's business records.

### Plaintiff Gustavo Camilo's Use of the Lyft App and Platform

13.     According to Lyft's business records, Plaintiff Gustavo Camilo first agreed to Lyft's Terms of Service on March 18, 2015.  In addition, according to Lyft's business records, Mr. Camilo clicked "I accept" on November 17, 2016 when the Lyft App displayed the updated September 30, 2016 Terms of Service Agreement to him. Attached as Exhibit 2 is a true and correct copy of electronic records showing Mr. Camilo's timestamped consents to the Lyft Terms of Service Agreement then in effect.

14.     Lyft's business records reflect that Mr. Camilo used the Lyft App on several occasions after November 17, 2016.

I declare under penalty of perjury that the forgoing is true and correct.  Executed this 30th

day of April , 2018 at San Francisco, California.


Nikolas Laufer-Edel